## WILLIAMS vs. BRUMMEL.

*Reading* a notice to take depositions, is not a sufficient service, under a statute requiring *notice in writing* to be served on the party. A *copy* must be delivered.

Parol evidence cannot be admitted to establish the contents of notes, which are not produced, or their absence accounted for; especially when the notes have been prosecuted to judgment in another State, and a judicial record of that fact exists.

A judicial record can only be proven by itself, or a duly certified copy from the rolls.

A. B. and C. D., being in partnership, executed their notes to a third person for goods furnished the firm, and E. F. became their security on the notes. E. F., having been compelled to pay the notes, sued C. D. to recover the amount paid, A. B. is not a competent witness for E. F. in such suit, to establish the fact of the partnership, or the liability of C. D.

THIS was an action of assumpsit, instituted by *Josiah Brummel*, against *Daniel E. Williams*, and tried in the Hempstead Circuit Court, in October, A. D. 1841, before the Hon. WILLIAM CONWAY B., one of the Circuit Judges. The declaration contained several counts; but the liability was claimed to exist on account of the payment, by Brummel, of certain notes executed by one Parskill Motley and Williams, to Wm. Buckner, jr., on which Brummel was security, and which he had been compelled to pay, and of the payment, by him, of certain judgments on which he became liable in the same way. The defendant pleaded the general issue, and two pleas of payment by Motley, and filed his petition for discovery, alleging that Brummel had been paid and indemnified, by selling certain negroes, mortgaged to him by Motley, to secure him. Issues were made on these pleadings, and the petition answered.

On the trial, the plaintiff produced certain depositions, taken in Kentucky. The defendant objected to the reading, because he had received no sufficient notice of taking them. The plaintiff produced a notice, which had been served on the defendant, by reading; and the Court held it sufficient. To the decision the defendant excepted. The depositions were then offered. The defendant moved to strike out so much of each as spoke of the notes executed by Motley, Williams, and Brummel, of suits upon them, and of a certain replevin bond, sued on and paid by Brummel, insisting that they were matters which could not be proved by parol, but the original notes must be produced, or copies, or their absence accounted for; and that records could only be proved by copies authenticated. The Court struck

out a portion of each, and allowed the residue to be read. The defendant excepted. The deposition of Buckner, *as read*, was in the following words: " I sold a stock of goods, amounting to about $1827, to Daniel E. Williams and Parskill Motley, for which they executed to me three notes, for about $609 20 cents each; and Josiah Brummel entered as the security of said Motley and Williams, on each of the three notes aforesaid, all which three notes were by said Brummel paid to me and to my agent. Motley and Williams also executed another note to me, for two hundred dollars, on which I instituted suit, and the said Josiah Brummel became their security in a replevin bond for the same; and, on the 14th day of June, 1832, the said Brummel paid to me two hundred and twenty-three dollars and sixty-eight cents, being the full amount of said replevin bond. The principal, interest, and costs, in all the cases, were paid by said Brummel, who was security as aforesaid."

In this deposition, the Court below had struck out, after the words "$609 20 cents each," the words " payable in five, ten, and fifteen months from the date, and dated the 17th day of March, 1831. The note that fell due first, was credited by two hundred dollars;" and, after the words " replevin bond," the words " suits were brought upon all the notes above alluded to, in the Green Circuit Court of Kentucky."

The deposition of Parskill Motley, (which was objected to on the ground that he was interested and incompetent: objection overruled, and exception taken), *as, read*, was in these words: " In the year 1831, in the month of March, Daniel E. Williams and myself entered into co-partnership. We purchased, about that time, a stock of goods of Wm. Buckner, jr., for which we executed our notes, payable in five, ten, and fifteen months, for the sum of $609 20 each, or thereabouts. We also executed another note to said Buckner, for two hundred dollars. We were sued on said $200 note, and it was replevied by Josiah Brummel, who has since paid the same, together with interest and costs. The three notes for $609 20 each, J. Brummel entered our security; and the said Josiah Brummel has paid the same to the said Buckner, together with interest, principal, and costs; making in the whole the sum of $1827 60, together with the interest and costs upon

four suits. To secure the said Josiah Brummel, I mortgaged to him, seven negroes, six of which were sold for the sum of ten hundred and fifty dollars, and the other, making the seventh, is dead. This amount is all I have paid to the said Brummel, or know 'of his having been paid, either by myself or Daniel E. Williams, in discharge of the before-mentioned notes. When suit was brought against us for the before-mentioned debts, I gave up to said Brummel the negroes mortgaged to him. I was present when the most of them were sold, and they were sold at fair prices, at that time, and by my consent."

In this deposition, the Court had struck out, after the words "into co-partnership," the words, "and we handed over to Archibald C. Cox, of Greensburg, Ky., the articles drawn between us, for safe-keeping;" after the words "two hundred dollars," the words, "which was credited on the first note that fell due;" after the words "interest and cost," the words, "the said $200 note was given in part consideration of the goods we purchased of the said Buckner;" after the words "our security," the words, "and suit was brought on said note;" and, after the words "principal and costs," the words, "with the exception of the credit of the $200 entered on the first note, which amount he had also paid, as before stated."

The deposition of Archibald C. Cox was also read, which proved that Williams and Motley bought the goods of Buckner; that they handed him a paper purporting to be their articles of partnership; that Williams and Motley boxed up and took away the goods; that Brummel entered their security for the goods, and, after a time, paid the whole amount; but without stating the amount.

The plaintiff then read the defendant's petition for discovery, which stated that the only true cause of action against him was, that, on the 17th March, 1831, Motley and himself executed two notes, with Brummel as security, to Buckner, each of that date, each for $609 20, one due at five, the other at ten months, both alleged by Brummel to have been paid by him. That, when they were executed, Motley and himself had entered into partnership, in Greensburg, Kentucky, the terms of which partnership were, that Motley was to furnish the goods, and Williams to attend to the business; the profits and losses to be equally divided; that the goods in question were purchashed by

Williams *vs.* Brummel.

Motley individually, and Williams only executed the notes as security; negroes were mortgaged by Motley, to Brummel, to secure him, and had been sold for a price sufficient to satisfy both notes and interest, and that Brummel attempted to appropriate the proceeds, to pay individual liabilities of Motley to himself.

The plaintiff then read a letter from Williams to him, in which he stated, that he supposed, from accounts, there was still an unsettled matter between them; that they had been unfortunate in business; that he had been a good while of opinion that the Buckner debt was settled, as Motley had informed him that his negroes were mortgaged to Brummel to secure him, and finally to pay the debt. He requested Brummel to write, and let him know how the matter stood, and how he could be released from it; that he did not wish any one to suffer on his account; and inquired how he would like to own some good land on Red river.

The plaintiff's counsel then testified that, about two years before, he spoke to Williams about the claim; that he refused to pay it, and said he supposed the notes had been paid by mortgage on Motley's negroes.

Upon this evidence, the jury found for the plaintiff $1237 14 damages, and the defendant sued out a writ of error.

*Pike & Baldwin,* for the plaintiff.

By the statute concerning depositions, *Rev. St.,* 325, the party intending to take depositions, " shall cause notice in writing, of the time and place of taking such depositions, to be served on the adverse party, if he reside in the county in which the suit is pending, and if not, then on his attorney of record in the cause." If neither the party nor his attorney reside in the county, " the putting of such notice in the office of the clerk," is to be sufficient.

The notice must be a notice in writing. The officer must leave with the party a written notice, an original from the clerk, or at least a certified copy in writing thereof. *In no just sense can a notice by reading be deemed a notice by writing.* No instance can be produced, where a notice, required to be served and given in writing, has been

Williams *vs.* Brummel.

valid, unless the service has been by the delivery of the paper itself, or a copy in writing. *Hart vs. Gray,* 3 *Sumn.* 339.

The 21st and 22d sections of the chapter on " Practice at law," *Rev. St.,* 622, which provide that, whenever, in the commencement or progress of any suit, it shall be necessary to serve any notice on either party to such suit, it may be served in like manner as a writ of summons, cannot be brought in to sustain the decision below. It would be difficult to find one solitary general maxim as to the construction of statutes, which will warrant the decision below. *Verba generalia restringuntur ad habilitatem personœ, vel ad aptitudinem rei: Verba ita sunt intelligenda ut res magis valeat quam pereat:* that is, that one part of a statute must be so construed by another, as that the whole may, if possible, stand. *Ea est accipienda interpretatio quœ vitio caret.* Without relying on these maxims, there is a rule which applies directly to this question. It is expressed in the uncouth maxim: " *Generalis clausula non porrigitur ad ea, quœ specialiter sunt comprehensa;*" or in the more eloquent language of the digests of the civil law: " *In toto jure, generi per speciem derogatur; et illud potissimum habetur, quod ad speciem directum est.*" The meaning of which maxim is, that when the law descends to particulars, such more special provisions must be understood as exceptions to any general rules laid. down to the contrary; and the general rules must not be alleged in confutation of the special provisions. More pithily, " A thing given in particular, shall not be told by general words." *Churchill vs. Crease,* 5 *Bing.* 180; *Dwains on Stat.* 765.

The Court permitted parol evidence to be given of the contents of notes, which were not produced, nor their absence accounted for; and of judicial records and judicial proceedings of a court in Kentucky, without any excuse rendered for the non-production of a transcript of that record. It is common learning, found in every law book, and matter of universal knowledge, that the best attainable evidence must be adduced. The law on this subject is reduced to certain axioms. No evidence of an inferior class can be substituted for that of a superior degree. The contents of a writing cannot be proved by a copy, still less by mere oral evidence, if the writing be in existence and attainable. 1 *Starkie,* 437; *Bullock vs. Korn, Cowen,* 30; as a letter.

*Taunton Bank vs. Richardson,* 5 *Pick.* 436; *Blade vs. Noland,* 12 *Wend.* 173.

That Motley was incompetent, there is no question. The rule is well settled, although there are some authorities to the contrary, that a person who is *prima facie* liable to the plaintiff for the debt in question, cannot testify with a view to throw even a part of the debt, *a fortiori* the whole of it, off himself and on to another. *Brown vs. Brown & Subb,* 4 *Taunt.* 752. *Ripley vs. Thompson,* 12 *Moore,* 55. *McBrain vs. Fortune,* 3 *Camp.* 317. *Marguand vs. Webb & Webb,* 16 *J. R.* 89. *Gregory vs. Dodge,* 14 *Wend.* 603. *Benedict vs. Hecox,* 18 *Wend.* 490. *Purviance vs. Dryden,* 3 *Serg. and R.* 402. *McVorough vs. Goods,* 1 *Dal.* 62; 2 *Dal.* 50.

A judgment will be reversed, if improper and illegal evidence was admitted, although there was other and sufficient evidence to the same point. *Osgood vs. Manhattan Co.,* 3 *Cowen* 612. *Anthoine & Marais vs. Coit,* 2 *Hall,* 40.

*Trimble,* contra.

A notice to take depositions is a notice " in the progress of the suit," and may be served in the same manner as *writs of summons,* which is " by reading it to the party, and in his presence and hearing." *Rev. St., title Practice at Law, sec.* 13, 21, 22.

The rule requiring the best evidence, does not apply either, 1st, where no presumption of fraud arises from the substitution of secondary evidence; 2d, in case of admission; and, 3d, where a writing is produced as collateral evidence, and not as the foundation of the action. 1 *Stark. Ev.* 3d *Part, marg. pp.* 392, 393, 394, 395. 2 *Stark. Ev.* 4*th Part, marg. pp.* 99, 100, 101, 102. The sheriff's return upon an execution on judgment against several, is evidence to show upon which the levy was made. *ib.*

The acts of ministerial officers are merely *prima facie* evidence, and never conclusive, except between the same parties. The rule laid down in 1 *Stark. Ev.* 292, 293, 294, 295, applies in this case. In principle, the evidence of a record is no way different in such a case as this. 2 *Stark. Ev., Part* 4, *pp.* 99, 100.

The judgment itself is the best evidence; and the existence, only,

of a note, bond, or even judgment, need be proved, as it shows merely the liability of the security, and is collateral evidence only, and not proof of a contract *inter partes*. If the money be made, by execution, out of the security, then strict legal proof of the judgment, and all proceedings under it, might be necessary; otherwise, the authority of the sheriff to collect and receive the money, would not appear. 3 *Stark. Ev.*, 4th Part, marg. pp. 1357, 1358, 1359. 4 *Cow. Rep.* 80, 424. 7 *Serg. & R.* 369. 7 *Cow. Rep.* 310. As to the liability of the principals, or either of them, to refund or repay money paid by their security. *Peak's Ev., Amer. ed.* 390, 391, 392, note 1. *Ford vs. Keith*, 1 *Mass. R.* 139. *Showe et al. vs. Laud.*, 12 *Mass. R.* 447. *Bunce vs. Bunce, Kirkby's Rep.* 137. *Sluby vs. Champlin*, 4 *J. R.* 461. *Clason et al. vs. Morris*, 10 *J. R.* 525. *Miller et al. vs. Ord*, 2 *Bin. Rep.* 382. *Duncan et al. vs. Keiffer*, 3 *Bin. Rep.* 126. 1 *Col. Rep.* 443. *Murrell vs. Johnson, Hen. & Mun. Rep., Amer. ed.* 449.

Was Motley's interest such as to disqualify him from testifying in favor of the defendant in error? As to equipoise of interest, see 2 *Stark. Ev.* 4th Part, 751, 752. 2 *Mass. Rep.* 108. 1 *Bibb*, 298. *Ad. Rep.* 144. 2 *Serg. & R.* 119. 3 *Martin's Rep. N. S.* 166. Interest must be direct and certain, not contingent or doubtful. 2 *Stark. Ev.*, 4th Part, marg. pp. 744, 745, 746, note C. 3 *T. R.* 33. *H. Bla.* 308. 1 *T. R.* 163. 2 *Esp. Ca.* 705. 3 *Stark. Ev.*, 4th Part, marg. pp. 1357, 1358. 2 *Stark. Ev.*, 4th Part, marg. p. 758, note 1. 14 *J. R.* 387. Where a witness is neutral, or stands indifferent between the parties, he is competent; much more so, when his interest is against the party calling him. If the defendant in error recovers, then the plaintiff would have recourse against the witness for contribution; he is therefore giving evidence against himself; or at least, his testimony relieves him of no responsibility.

An endorser is a competent witness in an action between the drawer and acceptor of a bill. See 1 *T. R.* 163. 2 *Esp. Ca.* 705. 3 *Stark. Ev.*, 4th Part, marg. p. 1358. As to the competency of a witness, when his interest is against the party calling him to testify, 1 *J. R.* 159. *Trustees of Lansingbury vs. Willard*, 8 *J. R.* 334.

As to notice, and the service thereof at common law, *vide* 1 *Stark.*

Williams *vs.* Brummel.

*Ev., marg. p.* 359.    3 *Caine's Rep.* 174.    2 *J. R.* 136.    2 *Stark. Ev.* 976.

By the Court, DICKINSON, J.

The first question which arises is, whether the reading to a party the notice to take depositions, is a sufficient service under our statute regulating the practice in such cases.    The act declares, that the party intending to take depositions shall cause notice, in writing, of the time and place of taking, to be served upon the adverse party, if he resides in the county in which the suit is pending; and, if not, then on his attorney of record in the cause. · *Rev. St. sec.* 6, 325.    It is contended that this section is regulated and restrained by the 21st and 22d sections of an act regulating the practice at law, (*Rev. St.* 622), which declares, that any notice, in the commencement or progress of a suit, may be served by any officer authorized to serve process, or by any other person who may be a competent witness upon the trial; and that the notice shall be served in like manner as writs of summons; and that, by the 13th section of the same act, writs of summons may be served by reading or delivering a copy thereof.    By inspecting these several provisions, it will be perceived that they relate to different subjects, and that the two acts are not at all contradictory or inconsistent with each other.    They are not *in pari materia,* and of course should not be taken together.    The first act relates to notice being given to take depositions; the latter respects the regulation of notice of other orders, either in the commencement or progress of a suit.    In such cases, the notice can be served by reading or giving a copy; and the general words of the act do not extend to the service of notice for the taking of depositions.    The question, then, has to be determined upon the act itself, in regard to the service of notice. What is the true meaning of that act?    Does the statute mean a notice by reading the same, or leaving a copy?    It unquestionably must be a notice in writing.    A notice in writing, according to the sense of the statute, surely means, that an officer, or some competent person, must leave with the party a written notice of the time and place of taking the depositions.

"In no instance," says Justice STORY, in *Hart vs. Gray,* 3 *Sumn.*

339, which is plainly similar to the one now before us, " can any case be produced where a notice, required to be served in writing, has been held valid, unless the service has been by the delivery of the paper itself, or a copy in writing." The reason of the rule is most obvious and just. The purpose of the notice is to apprize the adverse party of the time and place, so that he can attend, and cross-examine the witnesses, or make whatever other defence the law allows. To read a notice, instead of giving the original or leaving a copy, would be, in effect, to take away from him the advantages of a notice altogether. It would be substituting his frail and imperfect memory, as to time, and place, and names, instead of leaving him the written evidence of these facts. The reading would be of no avail, if that was sufficient: the officer certainly would not be bound to give the party an opportunity of copying it, or taking a memorandum of its contents. If there should be different times and places, it would be wholly impossible for a party to remember, with accuracy, these facts, which might be every way material for his defence. The Court, therefore, erred in receiving the depositions.

We might here close our inquiries; for, if the depositions were improperly admitted, there is no sufficient evidence left to warrant the recovery. We deem it proper, however, to remark, that the Court erred in admitting parol evidence to establish the contents of notes, which were not produced, nor their absence accounted for, on the trial. These notes had been prosecuted to judgment in the courts of Kentucky, and a judicial record existed of that fact. This Court has decided that a judicial record is incapable of being proved in any other way except by itself, or a regularly certified copy from the rolls. This principle is too plain and familiar to require further remark. There being no ground laid for the non-production of the notes, or that of the judicial records, of course it was error to permit any testimony to go, either in regard to the amounts or dates of the notes or judicial records, or any thing else connected with them.

There is another question still remaining to be decided.

Motley is shown to be the partner of Williams, the defendant in the action, at the time the debt was contracted for which the suit was brought. There is some conflict in regard to the competency of testi-

mony thus situated. The better opinion, however, seems to be, that
the witness is incompetent. It is certainly true, that a contingent in-
terest does not affect the competency of a witness. That principle,
we apprehend, has no application in the present instance. If the
party here is disqualified, it is upon the ground that he has an interest
in the event of the suit, which, although it may never be asserted
against him, nevertheless operates; and that he is, in fact, deposing
in his own favor, and charging the whole debt upon his partner,
when he is equally bound for his proportion. Were his interest equal,
then his evidence would be admissible. He would, in truth, have no
interest, for the law would consider him as standing indifferent with
regard to the parties; but where his interest must vary with the ver-
dict, the witness is exposed to a different responsibility. He ought
not, then, to be permitted to give evidence for the party whose success
would leave him with a diminished responsibility. It is no answer to
this argument, that the witness may not be called to make contribution.
He is under a legal liability to contribute; and the law supposes a
party will claim what is legally and equitably due him. His compe-
tency can only be restored upon the ground of a release, or that he
has a general or specific lien for an indemnity, which is certain and
fully adequate to remunerate him, and which cannot be affected by
the verdict. In *Connor vs. Kesee*, 5 *Serg. & R.* 371, the Court, after
laying down the rule upon the subject, remark, that "where the ver-
dict *may* create a new responsibility, in favor of or against the witness,
or increase or decrease an existing one, he ought to be rejected."
Such an interest is not deemed contingent. It is merely uncertain
when it will become operative. In the case of *Buckland vs. Tankard*,
5 *T. R.* 578, the action was by the endorsee of a bill of exchange
against the acceptor. The bill was drawn upon the defendant, and
by him accepted to pay Grexon, or his order, and endorsed in blank.
Grexon was called as a witness for the defendant, to prove that the
plaintiff had no property in the bill, and that it was left with him to
raise money from the defendant. He was objected to, as an interested
witness; and Lord KENYON, *Chief Justice*, said: "The whole ques-
tion turns upon this, whether the witness' situation would or would not
be bettered by the event of the verdict;" and he decided that the

Williams *vs.* Brummel.

witness was properly rejected.    This case goes, perhaps, further than any others in exclusion of a witness, upon the ground of interest, but we do not find that it has ever been overruled.    In *Marquand vs. Webb*, 16 *J. R.*, SPENCER, *Justice*, who delivered the opinion of the Court, said, that " the witness called was undoubtedly interested to render the burden upon himself as light as possible, and to throw it on the defendant.    The witness being, by his own confession, a part owner, would be answerable in contribution, and he would thereby mitigate his own loss."

The principle seems to be this, that wherever a fact is to be proved by a witness, and such fact be favorable to the party who calls him, and the witness would derive a certain advantage from establishing it in the way proposed, he cannot be heard.    The rule here laid down, which will be found fully supported by all the authorities, especially in *Hudson vs. Robinson*, 4 *Maule & Selwyn*, 475, and in *Benedict vs. Hecox*, 18 *Wend.* 510, and the cases there cited, demonstrate that Motley was an incompetent witness.    In the case now under consideration, he was called as a witness, to prove that Williams was his partner, which fact he establishes, and that both he and Williams were jointly liable to Brummel for money paid by him, as their security, upon certain notes, which were afterwards sued for and recovered by Buckner, and that Brummel paid them.    The payment of these notes constitutes the foundation of Brummel's claim, and, upon them, Motley, as well as Williams, is liable, and he is called in favor of Brummel, to charge Williams with the whole debt.    He is, therefore, evidently interested, being liable for the whole debt to Brummel, unless he can charge Williams, by his testimony, with one-half.    He is then giving evidence to diminish his own responsibility, and has, of course, a direct interest in favor of the party for whom he is testifying.    Therefore there was manifest error in the Court in admitting Motley's deposition.

Judgment reversed.