AMERICAN RADIATOR COMPANY *vs.* ELLEN HAMPSON.

FEBRUARY 6, 1918.

PRESENT:  Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)  Mechanics Lien.  Service of Notice of Lien.*
Under Gen. Laws, 1909, cap. 257, § 5, service of the notice of lien may be made by leaving the notice with some person living at the last and usual place of abode of the respondent within the State.

PETITION FOR MECHANIC'S LIEN.  Heard on appeal of respondent from decree of Superior Court and dismissed.

PARKHURST, C. J..  This is a proceeding brought by the petitioner, the American Radiator Company, a corporation having a place of business in the city of Providence, in the county of Providence and State of Rhode Island, against Ellen Hampson of the city of Cranston, in said county, to establish a lien for the sum of $160.75, besides interest, for materials furnished under and by virtue of the provisions of Chapter 257 of the General Laws of Rhode Island, revision of 1909.

The petition in substance, so far as necessary to be stated for the purposes hereof, alleges that the materials were

furnished within sixty days prior to the date upon which a notice of lien was recorded and that said notice was recorded in the city clerk's office in the city of Cranston on the twenty-fifth day of February, 1916, and that the petitioner caused a copy of said notice to be served upon the respondent on said twenty-fifth day of February, 1916. The petition further alleges that within the time prescribed by statute in such case made and provided, to wit, on the 20th day of June, 1916, the petitioner commenced legal process; subsequently and within the time prescribed by statute this petition was filed in the Superior Court in Providence County. The return day was fixed as August 7, 1916, and upon said return day appearance was entered for respondent. The case was heard in part on November 22, 1916, and was, after various continuances and re-assignments submitted on briefs on June 19, 1917; and on June 25, 1917, a rescript was filed in which the court held that the lien should be established for the amount claimed. On September 22, 1917, a final decree in favor of petitioner was entered from which on October 2, 1917, respondent claimed and duly prosecuted her appeal to this court.

There is one question only raised by the respondent in this case and that is whether or not the lien notice to the owner of the property, under said Chapter 257, Section 5, was properly served upon her so that a basis was laid for subsequent proceedings. There is no dispute between the parties as to the facts and while a transcript is before the court at this time no evidence was taken in the case as the facts essential to its determination appear upon the record, particularly the return of the officer who served the said lien notice, which return is upon a copy of the notice appended to the petition.

During the progress of the cause in the Superior Court the officer sought and obtained from the court permission to amend his return so that the question is to be determined by the amended return; the respondent admits that if the service of the lien notice, as shown by this return was a

proper service under the statute, then petitioner is entitled to the establishment of its lien for $160.75. Respondent admits that all other steps essential to the establishment of the lien were properly taken and within the time prescribed by statute.

Chapter 257, Section 5, Gen. Laws, R. I. (1909) reads as follows: "Sec. 5. No person who shall do work for or furnish materials to be used in the construction, erection or reparation of any building, canal, turnpike, railroad, or other improvement, without written contract, shall have any advantage of any lien therefor created by this chapter, unless he shall commence legal process for enforcing the same, in manner hereinafter provided, within six months from the time of the commencing of the doing of such work or of the commencing of the delivery of materials, if payment for the same shall not then be made; and provided, further, that no lien shall attach for materials furnished unless the person furnishing the same shall, within sixty days after such materials are placed upon the land, give notice in writing to the owner of the property to be affected by the lien (if such owner be not the purchaser of the materials) that he intends to claim such lien, and shall within the aforesaid sixty days place a copy of said notice on record in the office of the town clerk or recorder of deeds in the town or city in which said land is situated, in a book to be kept for that purpose, and if such owner cannot be found and has no place of abode within the state the said notice may be served by posting it on the land."

For convenience we here set forth Section 6 of the same chapter, which we shall have to consider in connection with Section 5: "Sec. 6. Any person who shall do or furnish work or labor in the construction, erection, or reparation of any building, canal, turnpike, railroad, or other improvement, at the request of any person who has entered into a contract, whether in writing or not, as contractor or any sub-contractor for such construction, erection, or reparation, shall have a lien for all such work and labor furnished or

done by him within forty days next preceding the time he shall give the notice hereinafter required. Any person in order to acquire such lien shall give notice in writing of his intention to claim such lien personally to the person against whose estate or title he claims a lien, or by leaving the same at his last and usual place of abode, if any, in this state, and shall within ten days after giving such notice place a copy of said notice on record in the office of the town clerk or recorder of deeds of the town or city in which said land is situated, in a book to be kept for that purpose; and if such owner cannot be found, and has no place of abode within the state, the said notice may be served by posting it on the said land; and within four months from the time notice shall be given as aforesaid, said claimant shall commence legal process, as is hereinafter provided, to enforce the lien, otherwise said lien shall be lost."

The officer's amended return indorsed upon the copy of the notice on file as Exhibit B attached to the petition is as follows: "Providence, Sc. I have this 25th day of February, A. D. 1916, at Cranston, in said County, left a notice, of which the within is a copy, with some person living there at the last and usual place of abode of the herein named Ellen Hampson, within my precinct, having been unable to find said Ellen Hampson."

(Signed) "Percy Butterfield, Deputy Sheriff."

The contention is made by the respondent that service of the notice required by Section 5 above should have been made upon the respondent personally; and that the service actually made "at the last and usual place of abode" of the respondent is not provided for by that section and is invalid. And the respondent in her brief cites a number of cases to support the proposition that, "It is a well settled principle of law that when a statute requires notice to be given to a person, without specification as to the method of service, personal service is meant, and that where notice in writing is provided for, as in the case here, the written notice itself must be given personally to the person to be notified;" citing *Beck* v. *Ashkettle*, 18 R. I. 374; *Simmons*

v. *Gardiner*, 6 R. I. 255; *Hart* v. *Gray*, 3 Sum. (U. S.) 339; *Town of O'Fallon* v. *O. & M. Ry. Co.*, 45 Ill. App. 572; 29 Cyc. 1119; *Matter of Cohen & Co.*, 2 How. Pr. (N. S.) 523; *Williams* v. *Brummel*, 4 Ark. 129; *Deimel* v. *Obert*, 20 Ill. App. 557; *Dalton* v. *St. Louis, M. & S. E. Ry.*, 113 Mo. App. 71; and some other cases.

This proposition supported by these cases has, however, no application here because as we construe the statute above quoted it is plainly intended that service other than personal service of the notice in question may be made. Referring again to Section 5, it says: "Shall within sixty days . . . give notice in writing to the owner" etc.; "and if such owner cannot be found and has no place of abode within the state the said notice may be served by posting it on the land." It thus appears that by the express provisions of the section either personal service of notice may be made or service "by posting it on the land," but the latter kind of service only if the owner "cannot be found" and "has no place of abode within the state." As shown by the return the owner could not be found, but did have a place of abode in Cranston where notice was left with a person living there by the deputy sheriff. If the respondent's contention were sound it would follow that in this case, although the petitioner had a period of sixty days within which to give notice, it would be unable to give any notice at all; the respondent could not be served personally, because she could not be found; the notice could not be posted upon the land because she had a place of abode within the state; and no service could be made at her place of abode. It would thus be possible that although the section is intended to give to the "material man" a means of securing his pay for materials furnished to the contractor and unpaid for by him and used in the building of a house for the owner of the land, the owner would be able to defeat the intention of the statute either voluntarily or involuntarily, by being where such owner could not be found by the deputy within the sixty days, although having a place of abode within the State.

By reference to Section 6, above quoted, it appears that a lien is thereby given to any person doing or furnishing work or labor, similar to the lien given to the "material man," by Section 5; and it is provided that, "any person in order to acquire such lien shall give notice in writing of his intention to claim such lien personally to the person against whose estate or title he claims a lien, or by leaving the same at his last and usual place of abode, if any, in this state," . . . then provides for record in the office of the town clerk or recorder of deeds; "and if such owner cannot be found, and has no place of abode within the state, the said notice may be served by posting it on the said land;" the remedy thus provided for workmen and laborers is similar to and stands upon the same footing as that provided for the "material man" in Section 5, except as to periods of time; and the language last quoted is the same in both sections.

Again by reference to Section 10 and Section 11 of the same Chapter 257, providing for issue and service of the citation upon the petition filed in the Superior Court it appears (Section 11) that service of the citation upon the owner may be made by a sheriff or deputy sheriff either "by leaving an attested copy at the last and usual place of abode" . . . "or by reading the same" etc.

It thus appears that the provisions of the statute as to service of notice (Section 6) and of citation (Section 11) are in express terms that such service may be made by leaving the notice or an attested copy of the citation at the last and usual place of abode, if any, within the State.

We are of the opinion that the words used in Section 5, "and if such owner cannot be found, and has no place of abode within the state," plainly imply that such service of the notice required under Section 5 may be made as is expressly provided in Section 6 and Section 11 and that the omission of express words to that effect in Section 5 was clearly an inadvertent omission such as frequently occurs in drafting statutes, and particularly in statutes like Chap-

ter 257, which is the composite revision of former and somewhat ancient statutes, frequently amended and added to from time to time since 1834.

To hold otherwise and to support the respondent's contention would compel us to say that the words "and if such owner cannot be found, and has no place of abode within the state" in Section 5, have no meaning and only serve the purpose of defeating the remedial intention of the statute; no reason is apparent why it could or should have been the purpose of the General Assembly to require a different method of service under Section 5 from that expressly permitted under Section 6 and Section 11 of the same act.

The construction which we have given above is in accord with general principles of construction which have always obtained among leading authorities.   Thus we find it stated in Potter's Dwarris on Statutes and Constitutions (1874) p. 128, (Vattel's Rules); "15. Every interpretation that leads to an absurdity, ought to be rejected." pp. 140, 141. (Domat's Rules) "If in any law we find the omission of something essential to it, or which is a necessary result of its provisions, and requisite to give the law its full effect, we may supply what is wanting but not expressed, and extend the law to what it was manifestly intended to embrace, but in its terms does not include." (p. 144) "12. In the construction of a statute, every part of it must be viewed in connection with the whole, so as to make all its parts harmonize if practicable, and give a sensible and intelligent effect to each.   It is not to be presumed that the legislature intended any part of a statute to be without meaning." (p. 145) "17. All statutes in *pari materia* are to be read and construed together, as if they formed parts of the same statute, and were enacted at the same time." (p. 179) "The real intention, too, when collected with certainty, will always, in statutes, prevail over the literal sense of terms.   For 'every statute ought to be expounded, not according to the letter but according to the meaning.' "

.   .   .   " Whenever the intention which the makers of   a

statute entertained can be discovered by fit signs, it ought to be followed in its construction, in a course consonant to reason and discretion."

Petitioner's brief cites a number of cases, relating to construction of statutes, which well illustrate the application of the above rules of construction; we have examined them all and find them in point in support of these general rules; but it is not necessary to review them at length since they do not bear directly upon the particular facts of this case. See, *U. S.* v. *Jackson*, 143 Fed. 783; *Turner* v. *State*, 40 Ala. 21; *Donohue* v. *Ladd*, 31 Minn. 244; *Nichols* v. *Halliday*, 27 Wis. 406; *Landrum* v. *Flannigan*, 60 Kan. 436.

We have no doubt as to the intention of the General Assembly, under the language of Chapter 257, Section 5, to provide for such service of notice as was made in the case at bar.

We therefore hold that such service was legal.

This appeal is dismissed; the decree of the Superior Court entered on the 22d day of September, 1917, is affirmed; and the cause is remanded to the Superior Court, sitting in Providence County, for further proceedings under said decree.

*Champlin & Harris*, for petitioner.
*McGovern & Slattery*, for respondent.